UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                        CRIMINAL NO. 3:16-CR-70-DPJ-LRA

SHREDEWRICK ANDERSON

ORDER

Defendant Shredewrick Anderson has filed a Motion to Modify or Reduce Sentence

under 18 U.S.C. § 3582(c)(1)(A).  Mot. [247].  Because Anderson has not demonstrated

entitlement to relief under § 3582, his motion is denied.

I.      Facts and Procedural History

On September 7, 2016, the federal grand jury indicted Anderson and seven other

individuals in a drug-trafficking conspiracy.  On July 28, 2017, Anderson pleaded guilty to one

of two counts leveled against him:  conspiracy to possess with intent to distribute 500 grams or

more of cocaine hydrochloride.  On December 12, 2017, the Court sentenced Anderson to a 90-

month term of incarceration.

Anderson, a 45-year old African-American man who says he suffers from asthma and

COPD, is currently housed in the medium-security facility in Lompoc, California (USP

Lompoc).  While USP Lompoc had an early outbreak of COVID-19 cases, as of October 15,

2020, the facility reports that zero inmates and four staff members have active cases of the virus.[1]

According to the Bureau of Prisons (BOP) website, Anderson is scheduled to be released on

---

[1] Also as of October 15, 2020, two USP Lompoc inmates and zero staff members have died from
COVID-19, and 150 inmates and 24 staff members have recovered from the virus.  At the low-
security facility on the same campus as USP Lompoc (FCI Lompoc), zero inmates and three staff
members have active cases of the virus, two inmates and zero staff members have died from
COVID-19, and 736 inmates and 16 staff members have recovered from the disease.

August 26, 2023.  Fearing he will face significant complications if he contracts COVID-19,

given his alleged underlying health conditions, Anderson asks the Court to modify his sentence

and order his release.

II.      Analysis

Compassionate-release motions arise under 18 U.S.C. § 3582(c)(1)(A)(i), which

provides:

> The court may not modify a term of imprisonment once it has been imposed
> except that . . . the court, upon motion of the Director of the Bureau of Prisons, or
> upon motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau of Prisons to bring a motion
> on the defendant's behalf or the lapse of 30 days from the receipt of such a
> request by the warden of the defendant's facility, whichever is earlier, may reduce
> the term of imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved portion of
> the original term of imprisonment), after considering the factors set forth in
> section 3553(a) to the extent that they are applicable, if it finds that . . .
> extraordinary and compelling reasons warrant such a reduction . . . and that such a
> reduction is consistent with applicable policy statements issued by the Sentencing
> Commission . . . .

The Government does not appear to dispute that Anderson exhausted as required by the statute.

So the question before the Court is whether, "considering the factors set forth in [§] 3553(a),"

"extraordinary and compelling reasons warrant" a reduction in Anderson's sentence, "consistent

with applicable policy statements issued by the Sentencing Commission."  18 U.S.C.

§ 3582(c)(1)(A)(i).

In a slightly different context, the Supreme Court found the Sentencing Commission's

applicable policy statements binding on district courts.  *See Dillon v. United States*, 560 U.S.

817, 830 (2010) (considering § 3582(c)(2), which permits a sentence reduction where the

applicable guideline range has been lowered "if such a reduction is consistent with applicable

policy statements issued by the Sentencing Commission").  But the question is whether there is

presently an applicable policy statement because "[t]he Sentencing Commission has not issued a

relevant policy statement since 18 U.S.C. § 3582(c)(1)(A) was amended to permit defendants to

file motions for compassionate release" on their own behalves. *United States v. Woods*, No.

1:17-CR-118-LG-JCG, 2020 WL 3452984, at *2 (S.D. Miss. June 24, 2020).

Looking to those policy statements, § 1B1.13 "essentially reiterates the requirements of

§ 3582(c)(1)(A), with the additional requirement that a defendant 'not be a danger to the safety

of any other person or to the community.'" *United States v. Dunlap*, No. 1:02-CR-165, 2020

WL 2062311, at *1 (M.D.N.C. Apr. 29, 2020) (quoting U.S.S.G. § 1B1.13(2)).  The application

notes to § 1B1.13 provide examples of extraordinary and compelling reasons to grant a

compassionate release.  Application Note 1 states:

> Provided the defendant [is not a danger to the safety of any other person or to the
> community], extraordinary and compelling reasons exist under any of the
> circumstances set forth below:
>
> (A) Medical Condition of the Defendant --
>
>> (i) The defendant is suffering from a terminal illness[.]
>>
>> (ii) The defendant is [suffering from a health condition] that substantially
>> diminishes the ability of the defendant to provide self-care within the
>> environment of a correctional facility and from which he or she is not
>> expected to recover.
>
> (B) Age of the Defendant -- The defendant (i) is at least 65 years old; (ii) is
> experiencing a serious deterioration in physical or mental health because of
> the aging process; and (iii) has served at least 10 years or 75 percent of his or
> her term of imprisonment, whichever is less.
>
> (C) Family Circumstances --
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor
>> child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner
>> when the defendant would be the only available caregiver for the spouse
>> or registered partner.
>
> (D) Other reasons -- As determined by the Director of the Bureau of Prisons,
> there exists in the defendant's case an extraordinary and compelling reason

other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Note 1.

Some courts continue to follow this policy statement and require proof that the defendant's circumstances meet the listed examples; other courts do not. *Compare United States v. York*, Nos. 3:11-CR-76, 3:12-CR-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019) (holding that "courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction), *with United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) (concluding after amendment of § 3582(c)(1)(A) that "the Director's prior 'interpretation of "extraordinary and compelling" reasons is informative,' but not dispositive" (quoting *United States v. Adams*, No. 6:94-CR-302, 2019 WL 3751745, at *3 (M.D.N.C. Aug. 8, 2019))).

The Second Circuit Court of Appeals addressed this issue head on in *United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712 (2d Cir. Sept. 25, 2020). That appellate court construed the First Step Act and Guideline § 1B1.13, concluding that the latter "is not 'applicable' to compassionate release motions brought by defendants[. Thus,] Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Id.* at *6.

Only two Fifth Circuit cases have touched this point. First, in *United States v. Gonzalez*, the court affirmed the denial of a compassionate-release motion in a case in which the district court "cite[d] to and quote[d] § 1B1.13." 819 F. App'x 283, 284 (5th Cir. 2020). The Fifth Circuit found no error where "the order's reference to the Guidelines [c]ould fairly be read as one step in the district court's own determination of whether extraordinary and compelling

4

reasons warrant a reduction of [the defendant's] sentence." *Id.* The court did not select *Gonzalez* for publication.

A few weeks later, the Fifth Circuit went a little further in another unpublished opinion. In *United States v. Bell*, the defendant sought compassionate release because his sentence was unduly long, among other reasons. No. 20-10427, 2020 WL 5823316, at *1 (5th Cir. Sept. 30, 2020). The Fifth Circuit noted that under § 3582(c)(1)(A), a reduction must be "consistent with [the § 1B1.13] policy statement," the commentary to which "provides a list of circumstances that constitute 'extraordinary and compelling reasons.'" *Id.* (quoting U.S.S.G. § 1B1.13 commentary (n.1(A)–(D))). The court concluded that Bell's case did not present an extraordinary and compelling reason for release because he did "not contend that he qualifie[d] for any of the circumstances listed in the commentary, and, indeed, a reduction of his sentence based on his proffered reasons would not be consistent with the policy statements set forth in § 1B1.13." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

Four points about *Bell* are necessary. First, the court clearly asked whether Bell's circumstances "qualified" under one of the four examples listed in § 1B1.13's application note. *Id.* So, unlike the Second Circuit's *Brooker* decision, the panel applied § 1B1.13 to a motion brought by the defendant. Second, the court may have left a little wiggle room by noting that Bell did not qualify under the examples, "and, indeed, a reduction of his sentence based on his proffered reasons would not be *consistent with* the policy statements set forth in § 1B1.13." *Id.* Does that mean defendants must demonstrate one of those circumstances or just something that could be viewed as "consistent with" them? Third, *Bell* was not a COVID-19 case, so we do not know whether the court would have viewed those circumstances as being consistent with the

enumerated ones.  And fourth, the court did not select *Bell* for publication, making the opinion persuasive but not binding authority.[2]

At bottom, neither *Bell* nor *Gonzalez* are binding, but both suggest that § 1B1.13 and the circumstances listed in its application note should be considered—if not applied.  Like the district court in *Gonzalez*, this Court will continue to consider § 1B1.13 as part of its analysis of whether extraordinary and compelling reasons support a sentence modification.  *See Woods*, 2020 WL 3452984, at *2 ("Regardless of whether the policy statement remains binding, it continues to provide helpful guidance for determining whether a defendant is entitled to compassionate release.").

In this case, Anderson does not suggest that his alleged underlying medical conditions fit within Application Note 1(A), and he does not contend that subsections (B) or (C) apply.  Instead, he argues that the threat of a COVID-infection, given his underlying health conditions, constitutes an extraordinary and compelling reason for a sentence modification.

To begin, there is a question whether Anderson has the conditions he claims.  As the Government argues in its opposition memorandum, before July 27, 2020, Anderson had denied any health or respiratory issues.  Gov't's Mem. [251] at 6.  For example, when he met with his pre-sentence probation officer, he "reported no history of physical health issues and advised he [was] not [then] taking any medication."  PSR [160] ¶ 82.  Consistent with that, he repeatedly denied respiratory issues when examined by BOP health-care providers.  *See* Mar. 12, 2019 BOP

---

[2] District courts have been flooded with Coronavirus related motions for compassionate release. Whether relief is limited to the four circumstances listed in the application note to § 1B1.13 comes up in nearly every case and "has split district courts across the country." *Brooker*, 2020 WL 5739712, at *5.  This Court therefore hopes the Fifth Circuit will be given an opportunity to address it in a published opinion.

Records [252-1] at 12 (noting "[n]o acute cardiopulmonary disease.  Lungs are clear"); July 10,

2018 BOP Records [252] at 32 (denying respiratory issues); June 14, 2018 BOP Records [252] at

10 (denying respiratory issues); *id*. at 16 (noting that lungs were "clear"); June 4, 2018 BOP

Records [252] at 1 (denying respiratory issues); Feb. 12, 2018 BOP Records [252] at 5 (denying

respiratory issues); Jan. 28, 2018 BOP Records [252] at 44 (reporting no medical problems).  Yet

on July 27, 2020, after the pandemic began and shortly before filing this motion, Anderson

reported that he has suffered "breathing problems for the last 16 years."  July 27, 2020 BOP

Records [252-2] at 1–2.  Anderson failed to respond to this argument in his reply and offered no

record evidence substantiating his alleged conditions.

Assuming Anderson does suffer from the alleged illnesses, the CDC has stated that

"[a]dults of any age with [COPD] **are at increased risk** of severe illness from the virus that

causes COVID-19."  Centers for Disease Control, Coronavirus Disease 2019, People at

Increased Risk of Severe Illness, People with Certain Medical Conditions, available at

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-

ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Oct. 6, 2020)

(emphasis in original).  Additionally, the CDC has explained that, "[b]ased on what we know at

this time, adults of any age with [moderate-to-severe asthma] **might be at an increased risk** for

severe illness from the virus that causes COVID-19."  *Id.*

Nevertheless, a number of courts have rejected the argument that the potential increased

risk justifies a sentence modification.  *See United States v. Chambers*, No. 18-47, 2020 WL

4260445, at *4 (E.D. La. July 24, 2020) (collecting cases).  Were Anderson correct that his

medical conditions entitle him to compassionate release, every inmate with an underlying

condition that might lead to an increased risk for complications in the event of a COVID-19

infection would present extraordinary and compelling reasons for a sentence modification.

Nor has Anderson shown that his risk of contracting COVID-19 while housed at USP

Lompoc is markedly higher than it would be if released.  Whereas USP Lompoc apparently got

its early outbreak under control, the number of reported infections is increasing throughout

Mississippi.  So, while Anderson argues that "there is no way to assure [his] safety at the

facility," there is no way to assure his safety if released.  Def.'s Reply [254] at 6.

Finally, the § 3553(a) factors do not support a sentence modification.  Those factors

include:

> (1) the nature and circumstances of the offense and the history and characteristics
> of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law,
> > and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training,
> > medical care, or other correctional treatment in the most effective manner;
>
> (3) the kids of sentences available;
>
> (4) the kinds of sentences and the sentencing range established for—
>
> > (A) the applicable category of offense committed by the applicable category
> > of defendant as set forth in the guidelines[;]
>
> . . . .
>
> (5) any pertinent policy statement . . . [;]
>
> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with
> similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Anderson's projected release date is in August 2023, so he has more than 34 months

remaining on the 90-month sentence the Court originally considered appropriate under the

§ 3553(a) factors.  Those factors remain valid.  First, the Court must consider the nature and

circumstances of the offense and the history and characteristics of the defendant.  Anderson

participated in a significant drug-trafficking conspiracy.  The original sentence was a just

punishment and was required to promote respect for the law while providing deterrence.

Reducing the sentence would also create sentencing disparities.  Anderson and three of

his co-defendants have been sentenced to date, with Anderson receiving the second-highest

sentence of the four.  Were the Court to release him now, Anderson's sentence would be roughly

equal to that of the co-defendant who received the lowest sentence.  In multi-defendant cases, the

Court carefully considers the potential for sentencing disparities, and changing Anderson's

sentence now would upset the balance the Court achieved in this regard on the front end.

Anderson also represents a current danger to the safety of the community—an

independent and alternative reason to deny this motion.  18 U.S.C. § 3582(c)(1)(A).  Anderson

argues otherwise, claiming that he poses no threat because his offense was non-violent and he

would self-quarantine/social distance once released.  Def.'s Reply [254] at 8.  Whether violent or

not, he participated in a significant drug-trafficking operation, and it was not his first crime.

Anderson had five prior convictions—including one for illegally possessing a firearm—and a

history of gang-related activity.  As for the prospect of reducing community threat through self-

quarantine, Anderson has a poor track record of compliance.  While on federal supervision for

his firearm conviction, he was twice revoked for new criminal conduct, including possession

9

with intent to distribute and domestic violence.  And his bond in this case was revoked when he was stopped for driving under the influence.[3]

In sum, reducing Anderson's sentence would jeopardize the safety of the community; fail to reflect the nature and circumstances of the offense, his history and characteristics, or the seriousness of the offense; and fail to promote respect for the law, provide just punishment for the offense of conviction, protect the public from further crimes, or acknowledge the need to avoid sentencing disparities.

III.    Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Anderson's Motion to Modify or Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A) [247] is denied.

**SO ORDERED AND ADJUDGED** this the 19th day of October, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Though not considered by the Court during sentencing, Anderson had one pending charge at the time of sentencing—the DUI that led to the revocation of his bond.  He also had four prior charges:  three had unknown dispositions, and the fourth was the domestic-violence charge that led to the revocation of supervised release.  On top of those, Anderson has seven prior arrests with various dispositions.  The volume of these other incidents suggests a need to protect the public.